(C.D. 4318)

Novelty Import Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided December 30, 1971)

*Siegel, Mandell & Davidson* (*Joseph S. Kaplan* and *Joshua M. Davidson* of counsel) for the plaintiff.

*L. Patrick Gray, III,* Assistant Attorney General (*Velta A. Melnbrencis,* trial attorney), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: This case involves the tariff status of an article invoiced as a "Small Nud Nick w/gold ball chain" that was imported from Japan via the port of New York in June 1965. The article was classified by the government as an entirety, i.e., a key chain, under item 740.35 of the Tariff Schedules of the United States which covers "[j]ewelry and other objects of personal adornment * * * [v]alued over 20 cents but not over $5 per dozen pieces or parts." [1] In accordance with this classification, duty was assessed at the rate of 55 percent.

Plaintiff claims the article is not an entirety and that only the key chain portion should be classified under item 740.35. The "Nud Nick" head, plaintiff claims, is separately dutiable at the rate of 17 percent under item 774.60 as other articles not specially provided for, of rubber or plastics.

The importation consists of a standard key chain approximately four inches long that has a connecting clasp for securing both ends of the chain. The key chain, in turn, is connected to a small animated "Nud Nick" head by means of a ring attached to a U-shaped metal pin that is imbedded in the head. The head itself is designed to depict the head of a troll [2] and consists of facial features resembling those of an imp or elf to which have been added an extremely bushy beard and hair, both made of fur.

Against this background, we think it clear that the imported article does not constitute an entirety but rather consists of two separate and

---

[1] Headnote 2(a) of schedule 7, part 6, subpart A provides that the term "jewelry and other objects of personal adornment" includes "key chains" among other things.

[2] *Webster's New World Dictionary of the American Language,* College Edition (1962), defines a troll as: "in *Scandinavian folklore,* any of a race of supernatural beings, variously conceived of as giants, dwarfs, or imps, living underground or in caves."

distinct items of commerce, i.e., a key chain and a "Nud Nick" head which retain their separate identities when combined and therefore are dutiable as separate items. The independence of these components is readily apparent from a casual examination of the sample. Indeed, the key chain to which the "Nud Nick" head is attached is by design, function and actual use a general purpose article which has obvious multiple uses in conjunction with numerous articles. See e.g., *Gene Miller, Atwood Imports, Inc.* v. *United States*, 59 Cust. Ct. 212, C.D. 3125 (1967), *dismissed and remanded on rehearing* 63 Cust. Ct. 452, C.D. 3934 (1969). Thus, the court can take judicial notice of the fact that in addition to or in conjunction with its use as a key chain,[3] the key chain utilized with the imported "Nud Nick" head is of a type that has been used with such diverse items as police whistles, sink stoppers, miniature flashlights, umbrellas, etc. What is more, the ease with which the key chain can be detached from the "Nud Nick" head provides indication that the two components herein, the key chain and the head, have not lost their separate commercial identities. For it is quite apparent that should a key chain become defective, another key chain of like construction or even a piece of string could be used in lieu thereof. Similarly, the novelty nature of the "Nud Nick" head is not destroyed by its removal from the key chain.

Pertinent is *United Merchandising Corp., et al.* v. *United States*, 48 Cust. Ct. 50, C.D. 2313 (1962), where the court held that certain dry cell batteries did not constitute an entirety with the radios with which they were imported nor—for that matter—were they parts of such radios. The court, noting that the imported batteries retained their identity as such batteries whether or not joined to the imported radios, cited (p. 54) the following excerpt from *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, 315, C.D. 1619 (1954):

> \* \* \* If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. \* \* \*

Similarly in *Silvine Importers, Inc.* v. *United States*, 57 Cust. Ct. 362, C.D. 2821 (1966), an electrical cord capable of use with many appliances and an electric pot called a "brewmaster" which was usable with domestic electric cords and occasionally sold alone were held not to constitute an entirety.

---

[3] On the matter of judicial notice, see *Tanross Supply Co., Inc.* v. *United States,* 58 CCPA 26, C.A.D. 1000 (1970).

On the other hand, in *Davar Products, Inc.* v. *United States*, 61 Cust. Ct. 57, C.D. 3526, 287 F. Supp. 994 (1968), certain battery-operated carving knives, consisting of power units and removable blades, were held properly classified as entireties under paragraph 354, Tariff Act of 1930, as knives with other than fixed blades. The court summarized the applicable principles thusly (pp. 61–62) :

> The most recent decisions of this court also indicate that it is the independence of both components which is at issue in a dispute over whether an article is an entirety. The independence of both must have been established by showing either that they have other uses, are sold separately, or retain their individual identities. In *United Merchandising Corp. et al.* v. *United States*, 48 Cust. Ct. 50, C.D. 2313, this court held among other things that batteries and radios imported together were not entireties. The batteries could be used to power other types of radios and conversely the radios could be powered by other batteries. Similarly in *Silvine Importers, Inc.* v. *United States*, *supra*, we held that an electrical cord capable of use with many appliances and an electric pot which was usable with domestic electric cords and occasionally sold alone did not constitute an entirety when imported together. See also *Better Houseware Company* v. *United States*, 40 Cust. Ct. 230, C.D. 1988, *Astra Trading Corp.* v. *United States*, 56 Cust. Ct. 555, C.D. 2703.
>
> This case differs from preceding cases in which the court has decided that importations consisted of separate articles rather than entireties. Here one portion of the importation, namely, the blade is unequivocally *dependent*. It is usable with no other power unit, is not usable alone, and has no separate identity. * * *

To similar import as *Davar* is *Lafayette Radio Electronics Corp.* v. *United States*, 57 CCPA 62, C.A.D. 977 (1970). In that case, transistor radios with leather cases were held to constitute entireties, the record showing, among other things, (i) that the radios and cases functioned together and were sold as a unit, and (ii) that the cases were specifically designed for the radio with which they were sold and thus had no independent commercial value save with such radios. See also *Miniature Fashions, Inc.* v. *United States*, 54 CCPA 11, C.A.D. 894 (1966).

In the present case, by contrast, when it is considered, in summary, that the key chain is a general purpose item; that it has other uses than with the "Nud Nick" head; that both components maintain their separate identities when joined; and that the commercial character of the "Nud Nick" is not unequivocally dependent upon the presence of the key chain, it must be concluded that the independence of both components has been established and that the merchandise in issue is therefore not an entirety for tariff purposes. See *United States* v. *Altray Company*, 54 CCPA 107, C.A.D. 919 (1967).

It is to be added that the appraisement of the present importation was predicated by the appraiser on the basis that the importation consisted of an entirety. i.e., a "key chain," and accordingly no separate values were returned for the key chain and the "Nud Nick" head. In this circumstance, the appraisement here is invalid and void, and the liquidation of the entries based thereon is premature and a nullity. It therefore follows that the present protest is likewise premature and must be dismissed. Pursuant to 28 U.S.C. § 2636(d), the matter is remanded to a single judge, sitting in reappraisement, to determine the proper dutiable values of the key chain and the "Nud Nick" head in the manner prescribed by law. See e.g., *The Westbrass Company* v. *United States*, 67 Cust. Ct. 334, C.D. 4293 (1971) ; Hancock Gross Mfg., *Inc.* v. *United States*, 60 Cust. Ct. 558, C.D. 3459, 285 F. Supp. 168 (1968) ; *Supreme Woodworking Machine et al.* v. *United States*, 54 Cust. Ct. 368, Abstract 69204 (1965).

Judgment will be entered accordingly.